CLEVELAND TRUST CO., TRUSTEE UNDER R. H. AND K. K. WHITE TRUST No. 1, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28141.   Promulgated April 12, 1929.

J. C. *Little, Esq.*, for the petitioner.
F. R. *Shearer, Esq.*, for the respondent.

1412

. OPINION.

SIEFKIN: The only question presented for our consideration is whether the value of the stock of the Park Drop Forge Co., as of July 12, 1915, or as of December 31, 1917, should be used as the basis in

computing gain to the petitioner trustee. Respondent contends that there was but one continuing trust beginning with the R. H. White Trust No. 1, created July 12, 1915, at which time petitioner acquired title to the stock. He also urges that petitioner held the legal title to the stock under the White Trust No. 1, a remainder interest therein under the Horr Trust, and legal title under the Joint Trust; and concludes that petitioner never had parted with title thereto.

We are unable to follow the respondent in either of his contentions. The issue as presented is confined to the question whether the Joint Trust is distinct from the White Trust No. 1, and, accordingly, we will consider the Horr Trust only in so far as it throws light upon the relationship between the other two trusts.

The White Trust No. 1 and the Horr Trust, if distinct, existed concurrently, after the creation of the latter, until their dissolution by the revocation instruments of December 31, 1917. The Horr Trust, by reference to the White Trust No. 1, granted the trustee the same power, and was established for the same uses and purposes. Such facts are hardly indicative as two trusts might very well be for the same uses and purposes and still remain distinct and separate trusts. There were two different trustees named and the assets of each trust were kept separate. The fact that petitioner was named the custodian of the investments placed in the Horr Trust means nothing except that the investments were to be deposited with it for safe-keeping. Petitioner was authorized to remove Horr as trustee, in which event legal title was to be revested in petitioner. The fact remains, however, that Horr was not so removed and revesting in petitioner did not take place under the provisions of that instrument. We see no justification for the conclusion that two distinct trust funds in the hands of different trustees were in effect the same trust. The agreement of the Horr Trust on its face creates a trust. True, it does refer to the earlier trust, but not in such a way as to lead us to believe that only a modification of the terms of such trust was intended.

The revocation instruments purport to terminate both of the above mentioned trusts, were so interpreted and acted upon by all parties concerned, and we are unable to see any reason why we should not treat them as having had that effect. We think such facts a complete answer to respondent's contention that there was but one continuing trust.

Nor is the remaining contention of the respondent persuasive. Respondent asserts that petitioner was the remainderman under the second instrument. The instrument does not so specify. Apparently the contention is based on the authority in petitioner to remove the trustee and to require a retransfer to it as trustee. But, as we have

1414

pointed out above, no such removal occurred and we are at a loss to comprehend how such authority constitutes petitioner a remainderman. How can it be said that the legal title was in petitioner at all times, when during an intervening period it passed to another trustee, to say nothing of the fact that White, in his revocation instrument respecting the Horr Trust, acknowledged receipt of such assets and in the Joint Trust instrument retransferred them to petitioner? It should be further noted that the White Trust No. 1 and the Joint Trust differed in that the grantors and beneficiaries, as well as the assets comprising the trust funds, were different.

> *The deficiencies are $6,165.49 for 1922 and $6,133.13 for 1923.*